IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDDW LLC, BDDW DESIGN LLC,** : <br> **BDDW STUDIO LLC**, and : <br> **TED TYLER HAYS**, : <br> : **CIVIL ACTION** <br> Plaintiffs, : <br> : <br> v. : <br> : **NO. 22-2648** <br> **BANK OF AMERICA, N.A.**, : <br> : <br> Defendant. : | |

## MEMORANDUM

**Perez, J.**                                                                                                    **April 29, 2025**

Defendant Bank of America, N.A. ("Defendant" or "BOA"), moves for summary judgment on its breach of contract and unjust enrichment counterclaims. ECF No. 59. To "establish[] the allegations in the Counterclaim[s]," Defendant relies almost exclusively on the declaration of Nicholas Cardarelli (ECF No. 59-1, "Cardarelli Dec."). ECF No. 59-19 at 6. Plaintiffs EDDW LLC ("EDDW"), BDDW Design LLC, BDDW Studio LLC, and Ted Tyler Hays (collectively, "Guarantors," and together with EDDW, "Plaintiffs") argue the Cardarelli Dec. is inadmissible and, in any event, genuine disputes of material fact exist as to contractual terms and Defendant's bad faith. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

I. **BACKGROUND**

On January 10, 2017, Defendant extended a $1.25 million commercial line of credit to EDDW, with a maturity date of January 10, 2018. ECF No. 10 ¶ 2; ECF No. 59-2. As security for the line of credit, Defendant and EDDW executed a Security Agreement (Multiple Use) granting Defendant a blanket security interest in certain EDDW property ("Collateral"). ECF No. 24-2 ¶ 10; ECF No. 59-1 ¶ 14; ECF No. 59-4. Defendant's continuing security interest in the Collateral was perfected by a UCC-1 Financing Statement

1

filed against EDDW on January 13, 2017, which has since been continued. ECF No. 24-2 ¶ 11; ECF No. 59-1 ¶ 15; ECF No. 59-5. The line of credit maturity date was extended several times, ultimately to August 31, 2021. ECF No. 24-2 ¶¶ 12–17; ECF No. 59-1 ¶¶ 16–22; ECF No. 59-12.

After EDDW missed the deadline to pay the balance on the line of credit, Defendant and EDDW executed a Master Credit Agreement ("Agreement") converting the line of credit to a term loan in the amount of $897,500 ("Term Loan") and a corresponding note ("Note"). ECF No. 24-2 ¶¶ 18, 26–27; ECF No. 59-1 ¶¶ 23–25; ECF No. 59-13; ECF No. 59-14. Guarantors executed and delivered a Guaranty and Collateral Agreement ("Guaranty") to Defendant, which obligated them for the amount due under the Term Loan and reaffirmed Defendant's security interest in the Collateral. ECF No. 24-2 ¶¶ 28, 30; ECF No. 59-1 ¶¶ 26, 28; ECF No. 59-15. The Agreement, Note, and Guaranty ("Term Loan Documents") were effective November 29, 2021. ECF No. 59-13; ECF No. 59-14; ECF No. 59-15.

Under the Note, interest accrued at a fixed rate of 8.5% until March 31, 2022, when the interest rate would increase by six percentage points. ECF No. 24-2 ¶ 32; ECF No. 59-1 ¶¶ 30–31. The Note provided that EDDW would remit equal monthly payments beginning on December 31, 2021, until March 31, 2022, when all outstanding amounts became due. ECF No. 59-14 § 2.3. Under the Agreement, payments were to "be made by debit to a deposit account," ECF No. 59-13 § 2.2(a), on the applicable due date. ECF No. 59-13 § 2.4(a); *see also* ECF No. 59-14 at 1 (authorizing direct debits on the applicable due date). On December 31, 2021; January 31, 2022; and February 28, 2022, Defendant unsuccessfully attempted to withdraw payments purportedly due from EDDW's checking account. ECF No. 10 ¶¶ 57, 61, 65. EDDW did not remit monthly payments or pay the balance due on March 31, 2022. ECF No. 24-2 ¶¶ 44–45; ECF No. 59-1 ¶ 33. On April 22, Defendant declared the default under the Term Loan Documents and demanded immediate payment in full of all outstanding amounts. ECF No. 59-1 ¶ 34; ECF No. 59-16.

Plaintiffs originally filed this action in state court on June 10, 2022. ECF No. 1. On September 9, 2022, after removal to this Court, Plaintiffs filed the Amended Complaint. ECF No. 10. Defendant filed its answer and counterclaims on November 30, 2022. ECF No. 20. Plaintiffs moved to dismiss Defendant's

counterclaims, ECF No. 21, and Defendant cross-moved for judgment on the pleadings. ECF No. 24. After this Court granted both motions in part and denied both motions in part, Plaintiffs' remaining claims were for intentional misrepresentation, breach of the implied covenant of good faith and fair dealing, and violation of New York state business law. ECF No. 38; *see also* ECF No. 10. Relevant here, the Court determined Plaintiffs sufficiently alleged Defendant breached the covenant of good faith and fair dealing by attempting to enforce the Note's monthly payment timetable provision when the Parties had never agreed to that term in prior negotiations. ECF No. 37 at 12. Specifically, Defendant may have breached (1) when BOA employee Carmen Bruce "misrepresent[ed] the [payment] terms necessary to convert the [line of credit] to a term obligation," and (2) by "intentionally attempting to deduct significant sums from Plaintiffs' account while the parties were continuing to engage in good faith negotiations." *Id.*

Defendant's remaining counterclaims were for EDDW's breach of the Agreement and Note, Guarantors' breach of the Guaranty, enforcement of the security interest in the Collateral against EDDW, and unjust enrichment against EDDW. ECF No. 38; *see also* ECF No. 20. The Court noted that while Plaintiffs had "raised a plausible claim for the unenforceability of the" monthly payment timetable provision, said provision was "severable from the overall contract." ECF No. 37 at 16. Plaintiffs answered Defendant's counterclaims on August 23, 2024. ECF No. 45.

Plaintiffs subsequently dismissed their remaining claims and any claims they could have brought with prejudice; "withdr[ew] any and all allegations of wrongdoing" against Defendant and its affiliates; "waive[d] and withdr[ew]" allegations and defenses "related to the alleged wrongdoing by Carmen Bruce in connection with documenting the conversion of the Line of Credit to the Term Loan"; and released Defendant and its affiliates from claims and defenses "relat[ing] to, in whole or in part, directly or indirectly[,] the making, underwriting, approval, administration, and/or servicing of the commercial loan subject of this action[.]" ECF No. 66.

Presently before the Court is Defendant's Motion for Summary Judgment. In support of its motion, Defendant primarily relies on the Cardarelli Dec. ECF No. 59-19 at 6. The Court accepted the Cardarelli

Dec. over Plaintiffs' initial objections but ordered Defendant to make Cardarelli available for a deposition and allowed Plaintiffs to supplement their opposition to Defendant's motion accordingly. ECF No. 73. In their supplemental opposition, Plaintiffs again challenge the admissibility of the Cardarelli Dec., this time because Cardarelli lacks the "personal knowledge" of the facts required under Federal Rule of Civil Procedure 56(c). ECF No. 75 at 2.

Substantively, Defendant argues that because Plaintiffs waived and withdrew their claims, in addition to any defenses to its counterclaims, it is entitled to summary judgment on its remaining causes of action. ECF No. 59-19 at 1. According to Defendant, it need only prove the enforceability of the Term Loan Documents and establish the amounts due. *Id.* Despite indicating to the Court that the only remaining issue was the amount due, ECF No. 76 at 6:1–7:8,[1] Plaintiffs now argue Defendant's attempted withdrawals from EDDW's bank account were made in bad faith, "raising serious questions as to whether [Defendant] impacted its right to enforce the guarantee against [Defendant] Hays." ECF No. 67 at 9. They further contend "there are genuine issues of material fact regarding whether loan payment was due at maturity, or whether [Defendant] induced an effective restructuring of the terms that modified when repayment was due, which likewise would affect any calculation of damages." ECF No. 75 at 4.[2]

---

[1] MR. GRANTZ: So the only, I guess, argument that's left to discuss since [Plaintiffs] haven't alleged any defenses in their . . . answer to the counterclaim and they've waived all the allegations that were associated with their claim of wrongdoing is, I guess, the amount due.

THE COURT: Okay. . . . I would like that to be more . . . crystallized here in this agreement because right now this agreement to me is quite vague. And I don't want us to come back here saying that there was not a full understanding by the [P]arties as to what we were bargaining for in this consent. . . .

MR GRANTZ: I'm going to take a shot at changing that paragraph to reflect the representation I just made, which I, unless Mr. Promisloff or Mr. Ciarlanto disagree with, that's my understanding of what we've agreed to.

MR. PROMISLOFF: I don't disagree.

MR. CIARLANTO: I do not either.

[2] Plaintiffs also allege a genuine issue of material fact as to the "appropriateness of the attorney[s'] fees sought and the amount claimed in the declaration of [Defendant's] counsel." ECF No. 67 at 11. The Court will separately rule on Defendant's Motion for Attorneys' Fees, ECF No. 74, and any response thereto. *See* ECF No. 71.

## II. STANDARD OF REVIEW

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc., et al.*, 954 F.3d 615, 618 (3d Cir. 2020). A dispute "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In assessing a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

## III. DISCUSSION

### A. Cardarelli Declaration

"An affidavit or declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Records are admissible if they were "made at or near the time by—or from information transmitted by—someone with knowledge," they were "kept in the ordinary course of a regularly conducted activity of a business," "making the record was a regular practice of that activity," the custodian testifies to these facts, and "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). And "[b]usiness records of regularly conducted activity are self-authenticating if they are 'accompanied by a written declaration of its custodian or other qualified person[.]'" *In re Flonase Antitrust Litig.*, 815 F. Supp. 2d 867, 876 (E.D. Pa. 2011) (quoting Fed. R. Evid. 902(11)).

The Cardarelli Dec. is proper because Cardarelli, as a BOA Senior Vice President and Portfolio Officer and the employee responsible for the loan at issue, is qualified to and does attest to the authenticity of the relevant business records—*i.e.*, the contracts attached to the affidavit and the documents Defendant's

commercial loan information platform generated. *In re Orion Ref. Corp.*, 397 B.R. 245, 251 (Bankr. D. Del. 2008) ("The declarant does state that she is [the company's] custodian of records and that the Documents are business records. The Court concludes that this is sufficient to permit it to consider the Documents in the context of the motion for . . . summary judgment. (citing Fed. R. Evid. 803(6); *United States v. Pelullo,* 964 F.2d 193, 200 (3d Cir. 1992); *United States v. Furst,* 886 F.2d 558, 571 (3d Cir. 1989)); s*ee* ECF No. 59-1 ¶¶ 1–11. And Plaintiffs do not challenge Cardarelli's or the documents' trustworthiness; instead, they focus on his alleged lack of "personal knowledge," despite its sufficiency under the Rules. *See* ECF No. 75 at 3–4. In sum, their arguments that Defendant's Motion must be dismissed due to alleged deficiencies with the Cardarelli Dec. are unavailing.

### B. Enforceability

The Term Loan Documents are governed and interpreted according to New York law. ECF No. 59-13 § 6.20; ECF No. 59-14 § 5; ECF No. 59-15 § 4. "[W]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (quotation omitted).

The Agreement defines "Event of Default" to include Plaintiffs' failure to make any payment within three days of its due date. ECF No. 59-13 § 5.1. If an Event of Default occurs, Defendant may "declare [EDDW] in default," "require [EDDW] to repay its entire debt immediately," and "enforce the security interest in any Collateral pursuant to the Uniform Commercial Code and any other applicable law[.]" ECF No. 59-13 § 5.2. EDDW defaulted on the Term Loan by failing to remit monthly payments or pay the balance due on March 31, 2022. As such, Defendant is entitled to immediate payment in full of all amounts outstanding under the Term Loan.

Plaintiffs incorrectly assert that genuine issues of material fact remain as to "whether loan payment was due at maturity, or whether BOA induced an effective restructuring of the terms that modified when payment was due, which likewise would affect any calculation of damages." ECF No. 75 at 4. They withdrew their claims and defenses relating to the enforceability of the monthly payment timetable

provision, *see supra* Part I, so the plain language of the Agreement and Note establish the loan payment terms and deadlines.

"A security interest is enforceable against the debtor . . . if: (1) value has been given; (2) the debtor has rights in the collateral . . . ; and (3) . . . the debtor has authenticated a security agreement that provides a description of the collateral[.]" N.Y.U.C.C. § 9-203(b). "A person gives value for rights if the person acquires them . . . in return for a binding commitment to extend credit or for the extension of immediately available credit"; "as security for . . . a preexisting claim"; or "in return for any consideration sufficient to support a simple contract." N.Y.U.C.C. § 9-204. A "security agreement . . . creates or provides for a security interest." N.Y.U.C.C. § 9-102. In exchange for an interest in the Collateral, Defendant advanced funds to EDDW under the Agreement. *See supra* Part I. Plaintiffs do not dispute EDDW's interest in the Collateral, which is further affirmed by the language of the Guaranty. *See* ECF No. 59-15 § 3 ("EDDW . . . hereby assigns and grants to [Defendant] . . . a continuing security interest in the following described property now owned or hereafter acquired . . . which does and shall secure all Obligations[.]"). And Plaintiffs executed the Guaranty, which is, by definition, a security agreement. The Guaranty describes the Collateral in detail. *See* ECF No. 59-15 § 3.

After default, a secured party may (1) "take possession of the collateral"; (2) "without removal, . . . render equipment unusable and dispose of collateral on a debtor's premises"; and (3) "require the debtor to assemble the collateral and make it available . . . at a place to be designated by the secured party[.]" N.Y.U.C.C. § 9-609. It may then "sell, lease, license, or otherwise dispose of any or all of the collateral" in a "commercially reasonable" manner. N.Y.U.C.C. § 9-610. Because EDDW defaulted on the Term Loan, and Defendant's security interest is enforceable, Defendant is entitled to take possession and control of the Collateral and liquidate it in a commercially reasonable manner.

"On a motion for summary judgment to enforce an unconditional guaranty, the creditor must prove the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty." *Davimos v. Halle*, 35 A.D.3d 270, 272 (N.Y. App. Div. 2006) (citation omitted). The Parties do not dispute

the existence of the Guaranty, which "operate[s] as a continuing, unconditional and absolute guaranty." ECF No. 59-15 § 2.1. And Plaintiffs do not counter Defendant's evidence substantiating the underlying debt or Guarantors' failure to perform. Accordingly, Defendant is entitled to summary judgment against Guarantors. *See Bank Leumi Tr. Co. of New York v. Rattet & Liebman*, 182 A.D.2d 541, 542 (N.Y. App. Div. 1992).

Finally, because "the existence of a valid contract renders unjust enrichment . . . unavailable as a remedy," *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)), Defendant's counterclaim for unjust enrichment is dismissed with prejudice.

### C. <u>Bad Faith</u>

Plaintiffs argue Defendant's motion should be denied because it did not propose a statement of undisputed facts, as required by this Court's policies and procedures. The Court acknowledges Defendant's failure and cautions Defendant to exercise greater diligence in the future. But given the unique posture here—*i.e.*, Plaintiffs' withdrawal of all claims and allegations of wrongdoing and release from defenses related to the loan—the Court concludes there is no genuine issue of material fact that would defeat Defendant's motion.

Plaintiffs contend Defendant's bad faith conduct "preclude[s] summary judgment because it directly calls into question" whether Defendant can "enforce the guaranty against [Defendant] Hays." ECF No. 67 at 9. They argue the Court already determined Defendant acted in bad faith by holding that Plaintiffs sufficiently pled breach of the implied covenant of good faith and fair dealing. But Plaintiffs hollowed out this legal conclusion when they withdrew all underlying allegations of wrongdoing against Defendant. And they have withdrawn their affirmative claim for breach of the duty of good faith and fair dealing.

Moreover, Plaintiffs offer no factual or legal arguments supporting the proposition that Defendant's unsuccessful attempts to collect funds according to the explicit terms of an executed contract affected the enforceability of the personal guaranty against Defendant Hays. And they explicitly released Defendant

from "any and all . . . defense[s]" relating to its administration and servicing of the loan at issue here. *See* ECF No. 66 ¶ 3.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment on Counterclaims 1, 2, and 3 is granted. The Motion is denied as to Counterclaim 7. The Court will rule separately on Defendant's request for attorneys' fees and costs. An appropriate order follows.